IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

TOMMY WEEKS; et al.                                                                                    PLAINTIFFS

vs.                                                                                                   No. 4:04CV283-D-B

ROBERT THOMPSON, in
his individual capacity; et al.                                                                       DEFENDANTS

OPINION GRANTING MOTION FOR SUMMARY JUDGMENT
AND DENYING MOTION FOR SUMMARY JUDGMENT

Presently before the court are the Defendants Bennie Grant, Michael Smith, and Ned Holder's combined motion for summary judgment, and the Defendant Robert Thompson's separate motion for summary judgment. Upon due consideration, the court finds that Grant, Smith, and Holder's motion should be granted but that Thompson's motion should be denied.

*A. Factual Background*

On the evening of May 29, 2003, the Defendant Robert Thompson, who was the Chief Deputy of the Sunflower County Sheriff's Department, was at his home in Sunflower County. He and his wife Lara had been separated for some time and he was aware that she and Plaintiff Tommy Weeks were engaged in an extramarital affair. Late that evening, Deputy Thompson observed Weeks driving past his home. At 2:00 a.m., Thompson called one of the Deputies, the Defendant Ben Grant, who was on call with the Sunflower County Sheriff's Department that evening, and lodged a complaint against Weeks for allegedly driving under the influence. Thompson asked Deputy Grant to meet him at Thompson's residence as soon as possible. Grant then called the Sheriff's office and asked the dispatcher to radio Deputy Michael Smith (also a Defendant in this action and also on call that evening) and instruct him to meet Grant at Deputy Thompson's home. While Grant was en route to Thompson's home, he received a call from Deputy Thompson stating

that Plaintiff Weeks was traveling to a convenience store that Weeks owned in Ruleville (which is in Sunflower County). Deputy Grant agreed that he would travel to the store rather than to Deputy Thompson's home. Upon arriving at the store, Deputy Grant asked Weeks if he had been drinking and driving; Weeks denied doing so. Deputy Thompson then arrived at the store and was allegedly dropped off by Deputy Smith, who left the area in his patrol car. According to the Plaintiffs, Deputy Thompson was wearing his work uniform. Thompson walked up to Weeks and Deputy Grant and ordered Grant to arrest Weeks for DUI. Grant refused, stating that he had not personally observed Weeks driving his vehicle while under the influence. At that point, Deputy Thompson and Weeks began shouting at each other; the shouting escalated into a physical altercation between the two, with Thompson striking the first blow. At some point, a female friend of Weeks, Plaintiff Ashlie Kimbriel, interceded in the fight. Thompson threw her to the ground and slapped her in the face.

Weeks and Kimbriel pursued criminal assault charges against Deputy Thompson as a result of the May 29, 2003, incident. In March of 2004, Thompson was convicted of simple assault in Sunflower County Justice Court.

On September 16, 2004, the Plaintiffs filed the current action pursuant to 42 U.S.C. § 1983 against both Sunflower County and against the four individual Defendants in their individual capacities. The individual Defendants have now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### B. *Summary Judgment Standard*

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e).

While all legitimate factual inferences must be viewed in the light most favorable to the non-movant, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986); Celotex Corp., 477 U.S. at 322. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Public officials, including law enforcement officers, are shielded from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Davis v. Scherer, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L. Ed. 2d 139 (1984); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); White v. Walker, 950 F.2d 972, 975 (5th Cir. 1991).

*C. Discussion*

In ruling on a defendant's claim of qualified immunity, the court first must determine

whether the plaintiff has alleged the violation of a clearly established constitutional right. Siegert v. Gilley, 500 U.S. 226, 230, 111 S.Ct. 1789, 1793, 114 L. Ed. 2d 277 (1991). Then, the court must determine whether the officer's actions were objectively reasonable under settled law in the circumstances with which he was confronted. Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L. Ed. 2d 589 (1991); see Pfannstiel v. Marion, 918 F.2d 1178, 1183 (5th Cir. 1990) (If "reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.").

In the case *sub judice*, the Plaintiffs have alleged the violation of clearly established constitutional rights - including their right against unlawful seizure and excessive force. Thus, the court must now determine whether the Defendants' actions were objectively reasonable. The court considers each Defendant's actions in turn.

First, as to the Defendant Ned Holder, he was apparently sued solely because he was the Sheriff of Sunflower County at the time of the alleged incident. He has been sued only in his individual capacity, however, and thus is entitled to qualified immunity if his actions regarding this incident were objectively reasonable (the Plaintiffs have also sued Sunflower County as a separate Defendant). Because Holder was not present during the altercation, and the Plaintiffs make no mention of him in their response to his motion for summary judgment, the court finds that his actions were objectively reasonable and he is entitled to a grant of qualified immunity. See, e.g., Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997) (rejecting respondeat superior theory of liability in Section 1983 cases). Thus, the Plaintiffs' claims against him shall be dismissed.

Next, as to the Defendant Deputy Michael Smith, his role in the altercation was also very

limited. He was indisputably not present during the altercation, and his only role in the events of May 29, 2003, were that he allegedly transported Deputy Thompson to the subject convenience store and dropped him off, after being directed by the on-duty dispatcher to ride to Thompson's home and pick him up. He then left the store and did not return until the altercation was over. Nothing about his conduct indicates he behaved unreasonably. Thus, the court finds that Smith's actions were objectively reasonable and that he is entitled to a grant of qualified immunity; the Plaintiffs' claims against him shall likewise be dismissed.

As for the Defendant Deputy Ben Grant, the Plaintiffs allege that his failure to successfully intervene in the fight between Deputy Thompson and Plaintiffs Weeks and Kimbriel was not objectively reasonable and that he should have stopped the fight. Grant testified in his deposition that if he did not know the people involved in the fight, he would have used pepper spray to break up the altercation. The Plaintiff Weeks admitted in his deposition, however, that Grant made repeated verbal requests for Deputy Thompson to stop fighting, and even physically interceded in the fight on one occasion. The fact that Grant was unable to convince the participants to stop fighting does not render his efforts unreasonable. Thus, the court finds that his actions were objectively reasonable and he is entitled to a grant of qualified immunity. Accordingly, the Plaintiffs' claims against him shall be dismissed.

Finally, the court turns to the actions of Chief Deputy Thompson. While at home on the evening of May 29, 2003, he called one of the on-call Deputies to lodge a complaint against the man with whom his wife was having an affair. He then, while wearing his duty uniform, went in a patrol car to the location where Plaintiff Weeks was speaking with Deputy Grant and ordered Grant to arrest Weeks for DUI, although there was plainly insufficient evidence for him to do so (a fact that

Grant made clear to Thompson in refusing to arrest Weeks).[1] After Grant refused to do so, Deputy Thompson began fighting with Weeks. In the midst of fighting with Weeks, Thompson also threw a female (Kimbriel) to the ground and slapped her; Thompson was later convicted of simple assault for his actions that night.

In light of these facts, the court finds that Deputy Thompson's actions that night were not objectively reasonable and that he is not entitled to a grant of qualified immunity. Thompson was plainly acting under color of state law that evening; he was wearing his uniform, arrived at the scene in a patrol car, personally called a Deputy to lodge a complaint (rather than calling the station, as a regular citizen would be required to do), and ordered a Deputy to arrest someone, clearly invoking his power as Chief Deputy. See United States v. Tarpley, 945 F.2d 806 (5th Cir. 1991) (holding that whether law enforcement officer is acting under color of law does not depend on duty status at time of alleged incident). Then, after being informed by the on-scene Deputy that an arrest of Weeks was not proper, Thompson proceeded to engage Weeks in a physical altercation, going so far as to fight with Kimbriel, a friend of Weeks'. In light of these circumstances, the court finds that Deputy Thompson is not entitled to a grant of qualified immunity.

### D. Conclusion

In sum, the Defendants Bennie Grant, Michael Smith, and Ned Holder's motion for summary judgment will be granted, and the Defendant Robert Thompson's motion will be denied. The

---

[1] The Plaintiff Weeks testified that upon arriving at the scene, Thompson walked up to Grant and said "you lock this son of a bitch up," meaning Weeks. Grant stated "I can't lock him up, Robert, he's not doing nothing but standing here." Thompson then said "Yeah, you're going to lock him up or I'm going to fire your sorry ass," to which Grant responded "I'm not going to do it. He's out of his vehicle; he's standing right here. I can't do it." Weeks dep. 121, 126.

Plaintiffs' claims against Grant, Smith, and Holder shall thus be dismissed.

A separate order in accordance with this opinion shall issue this day.

This the 4th day of January 2006.

/s/ Glen H. Davidson<br>Chief Judge